Botsford, J.
George H. Dean, Inc. (Dean) supplied raw structural steel to a subcontractor, Park Steel Corporation (Park), on a public construction project involving the Sharon Heights Elementary School in Sharon, Massachusetts. The general contractor on the project was P.J. Stella Construction Corporation (Stella), which was principal on a statutory labor and materials bond (payment bond) issued by the defendant Fireman’s Insurance Company of Newark, New Jersey (Fireman’s) as surety. Dean delivered the structural steel pursuant to orders made by Park, but Park failed to make full payments for the steel. Dean then brought this action pursuant to G.L.c. 149, §29 on the surety bond to recover $29,628.94 plus interest and attorneys fees.
In January 1996, a judge of this court (White, J.) allowed Dean’s motion for summary judgment on its claim that it was entitled to recover on the bond for the unpaid value of materials supplied to the school construction project. In April 1996, the order allowing summary judgment was amended to reflect the determination that a material issue of fact remained concerning the actual value of materials supplied. Thereafter, in July 1996, an evidentiary hearing on the issue of value was held before me. Set forth below are my factual findings and a discussion of the legal issues raised.
Findings of Fact
Based on the credible evidence presented, I find as follows.
Dean delivered raw structural steel for the school construction project to Park, a steel subcontractor on the project, which then undertook all further work necessary for the use of the steel in the project, including any fabrication. Park ordered all the steel in question for actual use in the construction project, and Dean’s deliveries were made in full accordance with orders of Park. When Dean receives an order for steel which exceeds $5000 in total, it requires that the purchaser fill out a project information report which lists, inter alia, the name of the project, the location, the general contractor and the bonding company involved. Dean would not supply materials for a public construction project without a payment bond being in place. In this case, Park provided Dean with the requested information for its project information report, identifying the Sharon Heights Elementary School construction project and describing the payment bond.
At no time was Dean given the shop drawings for the steel work in the construction project. Dean understood from Park that all the steel being ordered was for the school construction project. Park did not return to Dean any of the steel it ordered for this project. Park had returned unused steel on other projects for which Dean had been the steel supplier. Dean received one payment for the raw steel it had supplied to Park in the amount of$18,973.80. The value of the steel which was delivered but for which no payment has been received is $29,678.94. Fireman’s and Stella presented evidence, through its witness Lawrence P. Erekson, vice president of Stella, to the effect that a portion of the steel for which Dean seeks recovery was not actually used in the construction of the school; the value of the so-called unused steel product was, in Erekson’s opinion, $14,264.07. Erekson had not personally inspected the steel used in the construction to inventory the actual amount of steel used. His opinions about the unused amounts were derived by comparing Dean’s invoices to the shop drawings that he testified Park was using. No employee or officer of Park testified, nor did any witness who had inspected the construction project itself in relation to the steel at issue.
I do not fully credit the testimony of Erekson. I reach this judgment not because 1 found him to be personally incredible, but because I am not persuaded that a comparison of the shop drawings he used and the Dean invoices provides an accurate assessment of the amount of steel product supplied by Dean that was in fact used or incorporated into the project. Accordingly, I cannot find on the evidence presented that the value of what was physically used on the project was $15,364.87 ($29,628.94 — $14,264.07). At the same time, in light of the absence of any witness to testify about what was incorporated into the project, I also cannot find all the steel supplied by Dean to the project was in fact incorporated into the project.
Discussion
1. The principal issue raised in this case is whether Dean is entitled to recover the full value of the materials it supplied to the Sharon Heights Elementary School construction project, even though there is no affirmative proof that all of the delivered steel was actually incorporated into the project. Fireman’s and Stella argue that the answer must be no, since G.L.c. 149, §29 (§29) provides that the bond is “for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed *101 therein ...” [emphasis supplied). They rely on appellate decisions holding that recovery on the bond is only permitted for materials actually used in the project. See Walsh Holyoke Steam Boiler Works, Inc. v. McCue, 289 Mass. 291, 294 (1935). See also M. Lasden, Inc. v. Decker Elec. Corp., 372 Mass. 179, 183 (1977) (Lasden).
In my view, the Supreme Judicial Court would not continue to adhere to a reading of §29 that would require a supplier to establish, in order to recover on a payment bond, the materials it supplied were actually used in the project. In Lasden, the court referred to this reading, but also suggested the validity of the reading was not cast in stone. See Lasden, 372 Mass. at 183 (“[w]hile we intimate no opinion here on the continuing vitality of the interpretation of §29 found in McCue . . .”)[2] In that case, the court emphasized that §29 is to “be broadly construed to effectuate its self-evident policies” of protecting materialmen. Id. at 182-83. See C.C.& T. Const. Co., Inc. v. Coleman Bros. Corp., 8 Mass.App.Ct. 133, 137-38 (1979). In a case decided a week before Lasden, the court also stressed the broad, remedial purpose behind §29 to protect “laborers and materialmen from nonpayment by contractors and subcontractors engaged in the construction of public buildings or public works.” International Heating & Air Cond. Corp. v. Rich Const. Corp., 372 Mass. 134, 138 (1977), quoting American Air Filter Co. v. Innamorati Bros., 358 Mass. 146, 150 (1970). In the International Heating case, the court further noted that from their inception, payment bonds for public construction projects had been tied by purpose to statutory provisions authorizing liens for labor and materials furnished on private projects. The court pointed out that although originally, the mechanic’s lien law had required that the materials be incorporated into the completed structure for the lien to attach, in 1915 the law had been broadened to include materials furnished by virtue of a contract. In the court’s view, there was little justification for continuing to interpret the payment bond statute (§29) through analogy to the superseded provisions of the lien law. Id. at 136-39. Indeed, in that case, the court upheld a supplier’s recovery under the bond for certain rubber pads that were sent for installation to a public construction project, even though there was no evidence the pads were in fact used or employed in the project. See id. at 136, 139.[3]
Given that §29 has a generous purpose of protecting suppliers who provide materials to subcontractors and contractors for use in construction projects,[4] it runs contrary to this goal to bar recovery for materials delivered in good faith to the project pursuant to the subcontractor’s orders, but perhaps not ultimately used in the project — a circumstance that would not be within the control or even the knowledge of the supplier. See Lasden, supra, 372 Mass. at 184-85 and n.6. In this case, the defendants do not appear to dispute that all the steel at issue was delivered in accordance with Park’s purchase orders, or thatitwas all intended for use in the construction. Nor has any question been raised concerning Dean’s good faith in undertaking the work for Park. Dean’s ability to recover the full value of the materials supplied in these circumstances serves the statutory goal.[5] Dean should be permitted to do so.
2. With respect to attorneys fees, Dean is entitled to recover reasonable fees under the terms of §29. Dean has submitted an affidavit of attorneys fees which requests recovery of fees in the amount of $18,985.17, and costs of $1,425.47. I have reviewed the fee application in light of the statutory language: “A decree in favor of any claimant . . . shall include reasonable legal fees based upon the time spent and the results accomplished . . .”
This case did involve cross motions for summary judgment, but no actual trial. Based on my review of the fee application, I conclude that a reasonable fee would be $16,485.17.[6] Although Dean seeks costs as well, these are not provided for in §29. Compare G.L.c. 93A, §§9(4), 11. However, Dean will be entitled to recover statutory costs pursuant to G.L.c. 261, §§1, 13 and Mass.R.Civ.P. 54, upon application for same.
ORDER
For the foregoing reasons, it is ORDERED that judgment enter in this action in favor of the plaintiff George H. Dean, Inc. and against the defendant Fireman’s Insurance Company of Newark, New Jersey on Count I of the complaint in the amount of $29,628.94 plus interest from April 19, 1994, reasonable attorneys fees in the amount of $16,485.17, and costs. It is further ORDERED that judgment enter in favor of the defendant P. J. Stella Construction Corporation on Count II of the complaint, and that judgment enter dismissing the defendant Park Steel Corporation.

 The Lasden case involved the statute governing payment bonds for private projects, G.L.c. 149, §29A, rather than §29, which applies only to such bonds for public projects. As the court observed in the case, the language of the two statutes is slightly different, but they both seek to advance the same public policies. M. Lasden, Inc. v. Decker Elec. Corp., 372 Mass. 179, 182-84 (1977).

 For reasons that are not wholly clear to me, the only issue in the International Heating case was whether the supplier’s claim on the bond was timely filed: there was no dispute that if it were, the supplier would be entitled to recover the cost of the pads even though they had not apparently been installed in the project. See International Heating & Air Cond. Corp. v. Rich Const. Co., 372 Mass. 134, 138-39 (1977).

 On the purpose of §29, see also Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 93-94 (1980), and cases cited: C.C.&T. Const. Co., Inc. v. Coleman Bros. Corp., 8 Mass.App.Ct. 133, 137-38 (1979).

 It bears noting, as the court in the Lasden case discusses, 372 Mass. at 183-184 and n.5, that the federal payment bond statute analogous to §29 has been generally interpreted to *102 cover materials supplied to projects with the intent of being used in the project, but not ultimately incorporated into the work. See Annot., 79 ALR 2d 843-52. The same is true of state statutes in other jurisdictions. See generally Annot., 32 ALR 4th 1130-68. See Lasden, supra, 372 Mass. at 183-84 and n.5.

 I have reduced the award from the application because it appears that there was some duplication of effort by attorneys on the cross motions for summaryjudgment, and in any event that the total time spent on the cross motions was quite extraordinary.